Chief Justice Robertson
delivered the Opinion of the Court.
This is an agreed case, in which the only question presented, is the liberty or slavery of the appellants — Winney Barrington, Julian Barrington, and Henry Barrington; who are the children of Dinah Barrington, a woman of colour, who was born in the State of Pennsylvania, in March, ISO.O, but was afterwards brought to Kentucky, where, before she was twenty eight years old, she gave birth, to the appellants.
' This question depends altogether on another question ; that is, whether Dinah, the mother, was a free woman, or a slave, when the appellants were, each of them, born ; or whether, as the circuit judge seems to have thought, she was a slave until she had attained twenty eight years of age.
A statute of Pennsylvania, enacted on the first of March, 1780, for the gradual abolition of slavery withjn that Commonwealth, contains the following provisions, and which are the only legal provisions which can materially affect the question now to be decided.
“ Sec. 111. All persons, as well negroes and mulattoes as others, who shall be born within this state, shall not be deemed and considered as servants for life, or slaves; and all servitude for life, or slavery of children, in consequence of the slavery of their mothers, in the case of all children born within this state, from and after the passing of this act, as aforesaid, shall be, and hereby is, utterly taken away, extinguished, and forever abolished.”
“Sec. iv. Provided always, that every negro and mulatto child, born within this state, after the passage of this *433 act, as aforesaid, (who would, in case this act had not been made, have been born a servant for years, or life, or a slave,) shall be deemed to be, and shall he, by virtue of this act, the servant of such person, or his assigns, who would in such case have been entitled to the service of such child, until such child shall attain unto the age of twenty eight years, in the manner and on the conditions whereon servants bound by indenture for four years, are, or may he, retained or holdcn ; and shall he liable to like correction and punishment, and entitled to like relief, in case, he or slie he evilly treated by his or her master or mistress ; and to like freedom, dues and other privileges, as servants bound by indenture for four years are or may be entitled ; unless the person, to whom the service of any such child shall belong, shall abandon his or her claim to the same; in which case, the overseers of the poor of the city, township, or district, respectively', where such child shall he so abandoned, shall, by indenture, bind out every child so abandoned, as an apprentice, for a time not exceeding the age herein before limited for the servh e of such children.”
All perseas born in Penn, since the act of that state, for the gradual abolition ofslavery, took effect, in 1780, were born free. Thosef/i en inslaverythere, continued so. Children born afterwards,who but for the act wouldhavebeen slaves, became apprentices — with all the liabilities and immunities of white apprentices — bound to serve those to' wholnasslaves, theywouldhave belonged, until they attained 28 years of age : unless giose entitled to their services, as apprentices, abandoned them, when they were to be bound out, for the same term, by the overseers of the poor.
Looking either to the letter, or to the evident end and policy, of the statute from which the foregoing provisions have Iwen quoted, we can. have no difficulty in understanding the true import and effect of that enactment. It was intended to be a charter of universal liberty, within flie limits of Pennsylvania, thenceforth and forever— excepting only as to such persons as were then slaves. The great end of the statute — that is, the ultimate extirpation of slavery — could never he accomplished, if persons horn after its enactment, should he deemed to he slaves until they respectively attained the age of twenty eight years. The act was altogether prospective; and the legislature evidently intended that, as soon as all those who were then slaves should become extinct, or tie removed from tiie state, slavery itself should be extinguished in Pennsvlvania. And this obvious intention is perfectly consistent with the most lit *434 eral and punctilious interpretation of the language of the statute. The act does not say, that persons of colour, thereafter to be born, should not be deemed servants or slaves for Ufe; but its language is, that they should not be deemed “ servants for life, or slavesthat is, as explained more definitely in the next section, they should be qualified servants for twenty eight years only, and should not be slaves at all; and that all “slavery of children, (afterwards born,) in consequence of the slavery of their mothers, should be utterly taken away, extinguished, and forever abolished.” If, as we do not doubt, it was the intention of the act of 1780, that no person should, after its promulgation, be born a slave in the State of Pennsylvania, the language of the act is appropriate and consistent. But, if such was not the legislative object, a delusive and inappropriate phraseology has been adopted.
Partus sequitur ventrera, is the law of Ken. No one bom here of a free woman, can ever be a slave. The birth right is determined by the lex loci. A woman bom ■of a slave, in Pa. since 7 0, though subject to apprenticeship till twenty eight years old, was born free.
If, however, the language of the third section of the act of 1780, could be so construed as to leave any doubt respecting the true legislative intent, all perplexity would vanish when the next section of the act is examined. That section shews clearly, that the children (of slaves) born after the date of the act, should, in consequence of their forlorn and helpless condition, be retained in a state of pupilage, until they should attain twenty eight years of age, and should, during that period, stand in the same relation to their superiors or masters, as that of indented servants or apprentices.
We cannot doubt, then, that Dinah Barrington was born free, and never was a slave ; and that, as she was never a slave, her children must be free. Had they been born in Pennsylvania, they would certainly have been born free. The fact, that they were born in Kentucky, cannot, prejudice their natural and legal rights'; for partus sequitur ventrem is the law of this state; and we know of no law, human or divine, which stamps slavery, a nativitate, on children, whose mother was a free woman at the time of their birth. The only legal effect resulting from the fact, that the appellants were born in this state, is, that their birth-rights must be dc *435 terminad by the lex loci. Their mother having been a free woman at the time of their respective births, they, like all other children of free mothers, were, by the law of the place of their birth, born free, absolutely, at once, and forever.
in ’lien, and J¡oíof theiuo" ther’s npprenqualificdiy free" The children of1“b¡)“dKen‘ ther, that was asJavemPeno. when their abolition act pas-®®d’ ,,1" no78^ manclpated by shives foMifeTn Ken. I Bibb, 615.
A coloured per-so,n b°™ Í" who, hy the act abolishing sla™as prenticeship till may'bTheld'fó the likeserviee, term*here^but ’snpl 11 s|ave. !
The cases of Frank ads. Milam's executors, 1 Bibb, 615, and of Amy vs. Smith, 1 Littell, 326, which have been relied on by the counsel of the appellees, have no application whatever to the point we are now considering. In the first of those cases, the person, who sued for his freedom, was the child of'a mother who was born a slave in Pennsylvania, prior to the year 1780, and was, therefore, a slave when she gave birth to the claimant; and this court decided, that he was a slave because, at the time of his birth, his mother was a slave, and because he was tora in Virginia or Kentucky, where, by law, the child followed the condition of the mother. And, in the last of those cases, 1 Litlell, 326, the party claiming to be free was born in Pennsylvania prior to the year 1780, and was therefore a slave.
It is true, that the court said, in the case of Frank ads. Mila-m's executors, suma, that, “ by the provisions of the original act (that of 1780,) the children of slaves ‘born witbin the state’ (Pennsylvania,) after the passage thereof, were declared free after the age of twenty eight years; and if Sibley’s children (of whom Frank was one) had been born within that state, the right of freedom would have been incipient, to be consummated by the attainxnent of the age specified.” We do not, however, understand the court as meaning, hy the foregoing language, that Frank, had he been born in Pennsylvania since 1780, would have been a slave; but only that he would have been liable to the prescribed service for twenty eight years ; and, at the end of that term, would have been entitled to freedom from such servitude or control, just as an indented servant or apprentice would, at the end of the term for which he had been bound, be entitled to liberation from the government and discipline of his master.
But if the court could have intended to say, in the ease of Frank ads. Milam's executors, that, on the hypo *436 thesis therein stated, Frank would, in any respect or for any purpose, have been a slave at his birth, or at any time thereafter, we should not regard such a declaration as, in any degree, authoritative : first, because it was altogether obitur, and, second, because it would be, as we think, obviously irreconcilable with both the spirit and the letter of the act of 1780. No person, born in Pennsylvania since the year 1780, has ever been deemed to be a slave there, or elsewhere in America.
We are therefore of the opinion, that, upon the facts agreed, the appellants, and each of them, are, and ever have been, absolutely and in all respects, free per.mus of colour ; and that, as such, they are, and have ever been, from their respective births, entitled to alj the juivileges and immunities to which that class of persons are entitled by the laws of this Commonwealth.
Wherefore, the judgment of the circuit court must he reversed, and the cause remanded, with instructions to render a judgment declaring the appellants and each of them to be free.